UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RENEE ANNETTE CROTTY, | Case No. 2:16-CV-00067-RSM |
| Plaintiff, | |
| v. | ORDER ON SOCIAL SECURITY DISABILITY |
| CAROLYN W. COLVIN, | |
| Acting Commissioner of Social Security, | |
| Defendant. | |

## I.       INTRODUCTION

Plaintiff Renee Annette Crotty brings this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her application for Disability Insurance benefits and Supplemental Security Income disability benefits, under Title II and Title XVI of the Social Security Act.  This matter has been fully briefed and, after reviewing the record in its entirety, the Court REVERSES the Commissioner's decision and REMANDS for further proceedings.

## II.       BACKGROUND

Ms. Crotty initially filed applications for Social Security Disability Insurance (SSDI) benefits and Supplemental Security Income disability benefits (SSI) on December 15, 2010,

alleging disability beginning May 6, 2010.  Tr. 167, 174.  Ms. Crotty's claims were denied initially and on reconsideration.  Tr. 120, 123, 129, 131.

On March 19, 2012, Administrative Law Judge ("ALJ") Scott Morris held a hearing with Ms. Crotty.  Tr. 29.  Ms. Crotty was represented by attorney Sandra Widlan.  *Id.*  Judge Morris issued an unfavorable decision on April 20, 2012.  Tr. 9.  The Appeals Council affirmed Judge Morris's decision.  Tr. 1.  Ms. Crotty then filed a complaint in District Court, represented by attorney Christopher Lyons.  Tr. 780.

On February 5, 2014, Magistrate Judge Tsuchida entered an order remanding Ms. Crotty's case for further administrative proceedings pursuant to a stipulation by the parties.  Tr. 786-87.  The Appeals Council then vacated Judge Morris's April 20, 2012 decision, and remanded the matter to an ALJ for further proceedings.  Tr. 799-801.  The Appeals Council's remand order stated that:

- On February 16, 2010, James Symonds, M.D., indicated that the claimant's manipulative limitations are due to the wrist pain and occasional paresthesias in her hands, which she can do occasionally (Tr. 570).  The hearing decision afforded "great weight" to this opinion (Tr. 18) and limited the claimant to occasional handling (gross manipulation), but not occasional fingering (fine manipulation) without explanation (Tr. 15-16).

Tr. 800.  The Appeals Council then instructed the ALJ on remand to:

- Give further consideration to the claimant's maximum residual functional capacity, including the claimant's manipulative limitations, and provide appropriate rationale with specific references to evidence of record in support of

ORDER ON SOCIAL SECURITY DISABILITY, PAGE - 2

the assessed limitations (20 CFR 404.1545 and 416.945 and Social Security Ruling 85-16 and 96-8p).

*Id.*

On November 24, 2014 and January 29, 2015, ALJ Kimberly Boyce held hearings with Ms. Crotty. Tr. 679, 705. Ms. Crotty was unrepresented at these hearings. Tr. 682, 709. On May 21, 2015, Judge Boyce issued an unfavorable decision. Tr. 601.

On June 24, 2015, Ms. Crotty appealed the ALJ's decision to the Appeals Council. Tr. 585. She was once again represented by Christopher Lyons. Tr. 590. On November 13, 2015, the Appeals Council declined review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. Tr. 576, 580. Ms. Crotty then timely filed this judicial action.

### III.    JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

### IV.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews*

ORDER ON SOCIAL SECURITY DISABILITY, PAGE - 3

*v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178-79 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## V.  EVALUATING DISABILITY

As the claimant, Ms. Crotty bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in

any other substantial gainful activity existing in the national economy.   42 U.S.C. § 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four. *Tackett*, 180 F.3d at 1098.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).   Step one asks whether the claimant engaged in "substantial gainful activity" during the claim period. 20 C.F.R. §§ 404.1520(b), 416.920(b).  If she did, disability benefits are denied for the period in which she was engaged in substantial gainful activity.  *Id.*  For all claims periods in which the claimant was not engaged in substantial gainful activity, the Commissioner proceeds to step two.  At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does not have such impairments, she is not disabled.  *Id.*  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the

Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.   20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099-1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded. 20 C.F.R. §§ 404.1520(g), 416.920(g).

## VI.   ALJ DECISION

Utilizing the five step disability evaluation process, the ALJ found:

**Step one:** Ms. Crotty engaged in substantial gainful activity between January 2011 and April 2013, and was therefore not disabled during that time period. Tr. 607-08.  However, there was still a continuous twelve-month period during which Ms. Crotty did not engage in substantial gainful activity, and so the ALJ went through the remaining steps with regards to that time period. Tr. 608.

**Step two:** Ms. Crotty had the following severe impairments: degenerative changes of the cervical, thoracic, and lumbar spine, osteoarthritis/degenerative joint disease of the left knee, status-post left knee arthroscopy in May 2014, obstructive sleep apnea, obesity, carpal tunnel syndrome, hypertension, and diabetes mellitus. *Id.*  Ms. Crotty's alleged depression, PTSD, and premature ventricular contractions were either medically unsupported or not severe. Tr. 608-09.

**Step three:** Ms. Crotty's impairments were not severe enough to meet the requirements of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 609.

**Residual Functional Capacity:** Ms. Crotty had the RFC to perform light work except that, due to the combination of her impairments, she could only stand and walk for about two hours in an eight-hour workday and sit for more than six hours in an eight-hour workday. Tr. 610. She could frequently handle. *Id.* She could occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. *Id.* She could never climb ladders, ropes, or scaffolds or work at unprotected heights. *Id.* She could not perform work in which concentrated exposure to extreme heat, vibration, and/or hazards were present. *Id.*

**Step four:** Ms. Crotty was not able to perform her past relevant work. Tr. 616-17.

**Step five:** Considering Ms. Crotty's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could perform. Tr. 617. Ms. Crotty was not disabled from May 6, 2010 through the date of the decision. Tr. 618.

## VII.    ISSUES ON APPEAL

Ms. Crotty now challenges the ALJ's determination that she was not disabled from May 6, 2010 through the date of the decision. Ms. Crotty argues that the ALJ erred in finding that she engaged in substantial gainful activity from January 2011 to April 2013. Ms. Crotty argues that the ALJ also erred in evaluating her manipulative limitations. She also contends that the ALJ incorrectly relied on the vocational expert's testimony, which was in conflict with the Dictionary of Occupational Titles. Finally, she argues that the ALJ failed to properly consider the impact of her medications on her ability to work.

ORDER ON SOCIAL SECURITY DISABILITY, PAGE - 7

## VIII.   DISCUSSION

### A.  The ALJ's Substantial Gainful Activity Determination

Substantial gainful activity is work activity that is both substantial, *i.e.*, involves significant physical and/or mental activities, and gainful, *i.e.*, normally performed for profit.  20 C.F.R § 404.1572.   The Social Security Commissioner has established, by regulation, a monthly amount of earnings at which point the claimant is assumed to be engaged in substantial gainful activity.  *See* 20 C.F.R. § 404.1574(b)(2).  That amount was $1,000 per month in 2011, $1,010 per month in 2012, and $1,040 per month in 2013.  *Social Security: Substantial Gainful Activity*, https://www.ssa.gov/OACT/COLA/sga.html.

However, when a claimant is self-employed, ALJs cannot simply look at the amount of money earned by the claimant to determine whether the claimant was engaged in substantial gainful activity.  20 C.F.R. § 404.1575(a)(2).  This is because many factors besides capacity to work can affect the earnings of someone who is self-employed.  *Id.*  Therefore, ALJs must apply a three part test to determine if a self-employed claimant is engaged in substantial gainful activity.  *Id.*

The first test asks if the claimant "render[s] services that are significant to the operation of the business" and receives a net income above the presumptive level for substantial gainful activity.  20 C.F.R. § 404.1575(a)(2)(i).  Only if the claimant fails to meet this test should an ALJ go on to apply tests two and three.  *See* 20 C.F.R. § 404.1575(a)(2).  Test two is not relevant to this case.  Test three asks if the claimant's work activity "although not comparable to that of unimpaired individuals, is clearly worth the [presumptive level for substantial gainful activity] when considered in terms of its value to the business, or when compared to the salary that an owner would pay to an employee to do the work."  20 C.F.R. § 404.1575(a)(2)(iii).

Here, the ALJ found that Ms. Crotty was engaged in substantial gainful activity under test three due to her self-employed work running a daycare center out of her home.  Tr. 607.

Ms. Crotty testified that prior to the onset of her disability, she had operated a daycare center out of her home.  Tr. 687-88.  She initially had two children she cared for, but then her friend, Sheena Redding, joined her and brought in two more children.  *Id.*  All of the children were friends or family members.  Tr. 729.  Ms. Crotty testified that, after the onset of her disability, she was unable to care for the children anymore.  Tr. 688.  In order to help Ms. Crotty out, Ms. Redding began doing all the work caring for the children, but let Ms. Crotty keep most of the money.  Tr. 688, 893-94.

Ms. Redding watched the children in Ms. Crotty's home.  *Id.*  Ms. Crotty was there most of the time, but was unable to lift the children, bend over to change diapers, or chase crawling babies around the house.  *See id.*  She sometimes left for doctor's appointments or slept.  Tr. 694, 716.  Occasionally she would hold a child, or Ms. Redding would place a child on Ms. Crotty while she slept.  *Id.*  Ms. Redding wrote two letters in support of Ms. Crotty that confirmed this arrangement, but was unable to testify at either of Ms. Crotty's hearings.  Tr. 707, 893-94.  Ms. Crotty reported the money she received as income, not as a gift.  Tr. 715, 869-71.

Ms. Crotty's reported income was just barely below the level for presumptive substantial gainful activity.  *Compare* Tr. 696, 869-72, *with Social Security: Substantial Gainful Activity*, https://www.ssa.gov/OACT/COLA/sga.html.[1]       The   ALJ   implicitly

---

[1]  Ms. Crotty initially filed a tax return for 2013 that claimed $15,539 in income.  Tr. 869.  This would have been above the presumptive level for substantial gainful activity.  However, Ms. Crotty testified that this was a mistake, that her actual income for that time period was $12,340, and that she had filed an amended tax return to that effect.  Tr. 687, 691-92, 870-71.  This amended number is below the presumptive level for substantial gainful activity.  The ALJ noted this testimony, but did not state which number she was using.  *See* Tr. 607.  Given that the ALJ stated no reason to disbelieve the amended number, and given that the ALJ applied test three instead of test one, the Court will use the amended number as Ms. Crotty's income for that year.

ORDER ON SOCIAL SECURITY DISABILITY, PAGE - 9

acknowledged this fact, by applying the third self-employment test, which looks at the value of the work performed, and is only used if the claimant's income is below the level for presumptive substantial gainful activity. *See* Tr. 607; 20 C.F.R. § 404.1575(a)(2).

However, the ALJ clearly did not believe Ms. Crotty's testimony about how little work she performed at the daycare center. *See* Tr. 607-08. The ALJ did not believe that Ms. Crotty was receiving approximately $1,000 per month, for over three years, and claiming it as income on her tax returns, for doing nothing more than lying on a couch and letting Ms. Redding use her home. Tr. 607-08, 695, 715. The ALJ did not make explicit findings about what physical activities Ms. Crotty engaged in at the daycare center. *See* Tr. 607-08. Nor did the ALJ make explicit findings about the value of those physical activities. *See id.* Instead, the ALJ simply said that the income Ms. Crotty earned was the best indicator of the value of her work activity. Tr. 608.

If Ms. Crotty's income was the best indicator of the value of her work activity, and her income was below the presumptive level for substantial gainful activity, then it cannot be said that her work activity was "clearly worth the [presumptive level for substantial gainful activity] when considered in terms of its value to the business, or when compared to the salary that an owner would pay to an employee to do the work." *See* 20 C.F.R. § 404.1575(a)(2)(iii). Therefore, by the ALJ's own statements, under test three Ms. Crotty was not engaged in substantial gainful activity. The ALJ's contrary finding was in error.

The Commissioner argues that, even if the ALJ's substantial gainful activity finding was in error, that error was harmless because the ALJ continued through the five step process for time periods when Ms. Crotty had no income, and for those time periods the ALJ found that Ms. Crotty was not disabled. *See* Tr. 608, 618. However, the ALJ repeatedly cited the

ORDER ON SOCIAL SECURITY DISABILITY, PAGE - 10

substantial gainful activity finding as discrediting Ms. Crotty's testimony, as well as the testimony of her friends, family, and doctors.  *See* Tr. 609, 613-16.  If the substantial gainful activity finding was erroneous, then discrediting Ms. Crotty's testimony, and the testimony of her friends, family, and doctors, was also erroneous.  The Court cannot say that this error was immaterial to the ALJ's finding of nondisability.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1042-43 (9th Cir. 2008).  Therefore, the Court must reverse the ALJ's finding of nondisability and remand for further proceedings.

### B. The ALJ's Assessment of Ms. Crotty's Manipulative Limitations

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence.  *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (internal quotation marks omitted).  In such cases, "the ALJ's conclusion must be upheld."  *Morgan v. Comm'r of the Social Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999).  Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility."  *Id*. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons."  *Reddick*, 157 F.3d at 722.  The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Id*. at 725.  The ALJ also may draw inferences "logically flowing from the evidence."  *Sample*, 694 F.2d at 642.  Further,

ORDER ON SOCIAL SECURITY DISABILITY, PAGE - 11

the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (internal quotation marks omitted). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. at 830-31. However, the ALJ "need not discuss *all* evidence presented to her." *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). The ALJ must only explain why "significant probative evidence has been rejected." *Id*. (internal quotation marks omitted); *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

Ms. Crotty argues that the ALJ did not provide sufficient reasons for rejecting Dr. Symonds's opinion that Ms. Crotty was limited to occasional handling and fingering. For the reasons stated below, the Court agrees.

Dr. Symonds performed a consultative examination on Ms. Crotty and produced a report. Tr. 565-71. The date on the first page of that report is February 16, 2010. Tr. 565. However, that date cannot be correct. Ms. Crotty did not apply for benefits until after her May 2010 accident. Tr. 167, 174. In fact, Dr. Symonds's report references that accident, and discusses the injuries she sustained, so clearly the report was not written three months before the accident. Tr. 566. In addition, it appears the report was faxed at least twice, and the date stamps for the faxes are February 22, 2012, and March 19, 2012. *See* Tr. 565-71. It appears

most likely then, that Dr. Symonds performed the exam in February 2012.  *See also* Tr. 651 (discussion at first hearing about how the date was incorrect and the exam was done in 2012).

Most of Dr. Symonds report was dedicated to Ms. Crotty's neck and back injuries. However, Dr. Symonds also discussed Ms. Crotty's carpal tunnel syndrome.  *See* Tr. 565, 569-70.  Ms. Crotty told Dr. Symonds that she had pain in her wrists when she tried to squeeze objects, she had pain and numbness in her hands when she tried to write, her hands went numb at times, and she tended to drop objects.  Tr. 565.  Dr. Symonds noted that Ms. Crotty had tenderness in her wrists, but also noted that her wrists had a full range of motion, and she had normal grip strength in both hands.  Tr. 569.  Based on Ms. Crotty's wrist pain and the tingling and numbness in her hands, Dr. Symonds found that Ms. Crotty was limited to occasional manipulation.  Tr. 570.  Manipulation in this context encompasses both handling (gross manipulation) and fingering (fine manipulation).  Tr. 800.  Dr. Symonds's limitation is therefore best interpreted as a limitation to occasional fingering and occasional handling.

The first ALJ to review Ms. Crotty's case, ALJ Morris, gave "great weight" to Dr. Symonds' opinion.  Tr. 18, 800.  ALJ Morris consequently limited Ms. Crotty to occasional handling.  Tr. 16, 800.  However, without giving a reason or even noting the inconsistency, ALJ Morris did not place any limitations on Ms. Crotty's fingering.  Tr. 16, 18, 800.  This failure to limit fingering without explanation appears to be one of the reasons for the stipulated remand in this case.  *See* Tr. 787, 800.

On remand, however, ALJ Boyce gave "limited weight" to Dr. Symonds's opinion and only limited Ms. Crotty to frequent handling.  Tr. 610, 614-15.  Like ALJ Morris, ALJ Boyce did not put any limitations on Ms. Crotty's fingering, or mention fingering at all.  *See id.*  ALJ

ORDER ON SOCIAL SECURITY DISABILITY, PAGE - 13

Boyce gave two reasons for giving limited weight to Dr. Symonds's opinion on manipulative limitations.  Tr. 614-15.

First, the ALJ found that Dr. Symonds's opinion was rendered prior to the onset of disability, and so was entitled to lesser weight.  Tr. 614.  As discussed above, it is clear from the entire record that Dr. Symonds's opinion was not actually rendered before the onset date in May 2010.  The ALJ therefore erred by diminishing the weight given to Dr. Symonds's opinion on this basis.

The ALJ's second reason for giving limited weight to Dr. Symonds's opinion was the "relatively benign" physical examination findings of both Dr. Symonds and Dr. David.  Tr. 615.  Although Dr. Symonds found tenderness of the wrists, he also found a full range of motion and normal grip strength.  Tr. 569, 615.  Likewise, Dr. David consistently found negative Tinel's and Phalen's signs in the wrists.  Tr. 452, 455, 457, 459, 461, 615.

The physical exam findings might have been a sufficient reason for the ALJ to discount Dr. Symonds's opinion with regards to handling.  However, the Court cannot find that the ALJ gave "specific and legitimate reasons" for rejecting the fingering limitation when the ALJ did not even mention fingering.  Perhaps the ALJ rejected the fingering limitation based on the physical findings of Dr. Symonds and Dr. David.  But it is also possible that the ALJ did not consider fingering at all.

The ALJ's failure to mention fingering is particularly troubling given that the previous ALJ failed to mention fingering, and the remand order specifically pointed out this mistake.  Tr. 800.  Given this failure to discuss fingering, and the confusion about the date on which Dr. Symonds performed his examination, the Court finds that the ALJ's rejection of Dr. Symonds's

manipulative limitations was not supported by substantial evidence.   The Court therefore reverses the ALJ's finding of nondisability and remands for further proceedings.

**C. Conflict Between Vocational Expert Testimony and the Dictionary of Occupational Titles**

Normally, the testimony of a vocational expert should be consistent with the Dictionary of Occupational Titles ("DOT").  *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007).   If there is an inconsistency, it is the ALJ's job to ask the vocational expert for an explanation of that inconsistency.  *Id.*  The ALJ is only allowed to accept the vocational expert's testimony over the DOT if the expert gives a reasonable explanation for the inconsistency.  *Id.*  One way a vocational expert can reasonably explain an inconsistency is by testifying about her experiences with the way the job is actually performed in the local labor market.  *See Johnson v. Shalala*, 60 F.3d 1428, 1436 (9th Cir. 1995) (finding sufficient the vocational expert's explanation based on "his knowledge as an expert of the existence and characteristics of jobs available in the . . . area").

Here, the vocational expert testified that a hypothetical person with Ms. Crotty's RFC could perform the jobs of cashier II, office helper, nut and bolt assembler, and small products assembler. Tr. 737-40.  All four of these jobs are listed in the DOT as "light" work.  *See* DOT 211.462-010, *available at* 1991 WL 671840; DOT 239.567-010, *available at* 1991 WL 672232; DOT 929.587-010, *available at* 1991 WL 688159; DOT 706.684-022, *available at* 1991 WL 679050.  In order to be able to perform the full range of "light" work, a person must be able to stand or walk for up to six hours in an eight-hour workday.  *See* SSR 83-10, *available at* 1983 WL 31251, at *6.  Ms. Crotty's RFC limited her to standing or walking for up to two hours in an eight-hour work day.  Tr. 610.  Therefore the vocational expert's finding that someone with Ms. Crotty's RFC could perform these jobs was in conflict with the DOT description of these

jobs as "light" work.  However, the vocational expert recognized and explained this conflict. Tr. 738-41.

The vocational expert stated that, in approximately half of all cashier II jobs, the employees were allowed the option of sitting or standing while performing their job.  Tr. 738.  The vocational expert thus eroded the number of available cashier II jobs by half in order to represent only the jobs that could be performed primarily while seated.  *Id.*  As to the three other jobs, the vocational expert found that, in the vast majority of them, the employee would have the option of performing the job primarily while seated.  Tr. 738-41.  The vocational expert did not erode these numbers at all.  *Id.*  The vocational expert stated that her conclusions regarding the number of available jobs that could be performed primarily seated were based on her "experience of performing labor market surveys and job analyses over the past 15 years." Tr. 739.

Ms. Crotty argues that this explanation was insufficient for the ALJ to accept the vocational expert's testimony over the DOT descriptions.  The Court disagrees.  The vocational expert acknowledged the inconsistency and gave a reasonable explanation for that inconsistency, based on her fifteen years of labor market surveys and job analyses.  While it might have been useful for the vocational expert to provide more specific data, the Court does not find that the ALJ erred in relying on the expert's testimony over the DOT descriptions.

**D.  Failure to Consider the Impact of Ms. Crotty's Medications**

Finally, Ms. Crotty argues that the ALJ erred in failing to consider the impact of her medications on her ability to work.

Ms. Crotty testified that the biggest obstacle she faces in her ability to work is her medication.  Tr. 726.  She testified that when she takes all of her medications she does not

function well and has to spend the entire day sleeping on the couch.  *Id.*  But if she does not take her medications, she is in so much pain she has to lie on the couch anyway.  *Id.*  The ALJ's decision noted this testimony, but then, when discussing medication side effects, discussed only cognitive deficits and not the need to sleep on the couch all day.  Tr. 611, 613.  The ALJ also failed to discuss the effect Ms. Crotty's methadone prescription would have for jobs that required drug testing.  *See* Tr. 747-48.  The Court need not decide whether these failures warrant reversal, however, given the other grounds for reversal discussed above.

## IX.   CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED and the case is REMANDED for further administrative proceedings consistent with this Order.  On remand, the ALJ shall reevaluate whether Ms. Crotty was engaged in substantial gainful activity.  The ALJ shall also reevaluate the medical and other opinion evidence, Ms. Crotty's RFC, her credibility, and, if necessary, steps two, three, four and five of the five step sequential evaluation.  In particular, the ALJ shall reevaluate Dr. Symonds's manipulative limitations, and shall specifically address fingering.  The ALJ shall also address the effect of Ms. Crotty's medications on her ability to work.  Ms. Crotty may choose to re-contact the treating and examining sources for updated records and other medical source statements and obtain additional medical and vocational expert testimony to present at the hearing.

DATED this 2 day of August 2016.


RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER ON SOCIAL SECURITY DISABILITY, PAGE - 17